Okay, so our call this morning is agenda number three, case number 108-846, People of the State of Illinois v. Howard J. Hillier, Appalachia. Good morning. May I proceed, Counsel? Thank you, Your Honor. May it please the Court, I am Jay Wigman, an attorney for defendant appellant Howard Hillier, who asserts that because the Fifth Amendment commands that no person may be compelled to testify against himself in a criminal proceeding, it follows, as was stated by the United States Supreme Court in Estelle v. Smith, that where a defendant in custody is faced with a psychological examination that he neither initiated nor seeks to admit into evidence, any answers that he gives in that inquiry cannot be used against him unless he is first advised that he has the right to remain silent and warned of the consequences of participating in such an evaluation. Specifically, that those statements can be used against him at a sentencing hearing. The facts of this case are very brief, rather straightforward. Following into the facts, Counsel, can I see if I'm following you as to exactly what your argument is? As you know, the Court has a duty to decide the case on other than constitutional grounds if it can be done. Are you asserting that the statutory argument is an independent basis of relief? As both an independent basis for relief and also as part of the argument under the constitutional argument. Okay, so it is independent, but then it merges into the constitutional argument. Is that a fair assessment, then? Yes. Okay. The trial court wrongly thought that the evaluation was mandatory. The evaluation is required under Section 16 of the Sex Offender Management Board Act for a defendant who is eligible for probation. The defendant in this cause was not eligible for probation. It was a Class X offense with a range of 6 to 30 years. Based on the evaluation, which, as I say, the trial court thought was mandatory and stated was mandatory, and in fact stated that no sentencing hearing could be conducted until the evaluation was completed. The evaluation placed the defendant in the top 12% of risk offenders for recidivism. And the trial court, based on this and saying, based on everything contained within that statement, sentenced the defendant to 20 years. Now, I will note first that there was no objection to the sex offender evaluation itself filed as part of the motion to reconsider sentence. And I was incorrect when I argued that, in fact, the state had waived that argument at the appellate court level. The prosecutor did raise that argument in the appellate court. But I would note that the appellate court did not consider waiver in this case. And I would note that in Estelle v. Smith, the seminal case on this issue, the waiver argument was also dismissed, largely because, and as is argued here, this is an issue of a constitutional violation of the defendant's rights. Estelle v. Smith informs this case in numerous ways. Probably the most important is the notion that an evaluation such as this is appropriate and accepted under constitutional principles where its neutral purpose is performed or where the stated purpose of an evaluation is the driving force. However, where, as in Estelle v. Smith and as in the instant case, where the neutral purpose is converted into a prosecutorial purpose, that's when the evaluation becomes inappropriate and does not comport with the Fifth Amendment. I would note that in Estelle v. Smith, the court ordered a competency evaluation because the court did not want to consider a death penalty case without first determining that that defendant was competent. Following that, however, the state utilized at sentencing the defendant's competency evaluation and the statements of the evaluator, the psychiatrist, who said that the defendant was a severe sociopath and likely to reoffend. In the instant case, the purpose, according to the Sex Offender Management Board, and by limitation under the corrections code that this be provided only to defendants who are eligible for probation, demonstrates that the purpose, while a proper one to determine whether there was any risk to society of the defendant being released on probation, relief that he could not have had in this case, was improperly used when it was used by the court to, and by the state to argue, that the defendant was a high risk of reoffending. And the court specifically stated, based on that, I'm elevating the sentence from what might normally have been the case. He said this would have been a different question if the evaluation had come back and shown you were not likely to reoffend. But it shows that you're likely to reoffend and imposed a sentence of 20 years. This still hasn't been really extended beyond the unique facts of that case, though, has it? It, well, to the extent that it's been extended to noncapital cases, there has been that extension specifically by Mitchell. But the maturity, of course, to look at it have not extended it to the post-trial setting, has it? Mitchell also extended it to post-trial. But in terms of, for instance, a probation officer conducting an evaluation, specifically in Minnesota v. Murphy, the Supreme Court did not extend it. But it did so on different reasons than are present here. It did so because the, and the court specifically stated, this would be a different question if the defendant were in custody.  He was free to come and go. He was called in by his probation officer. And it was during a probation interview that he gave evidence about commission of an offense from six years before. Again, as stated in Murphy, it was a different question because that defendant was free to leave, he knew what the purpose of the evaluation was, and he was not in custody. To the extent that this defendant was in custody clearly, then Estelle v. Smith applies to the instant case. In fact, there are numerous parallels that further demonstrate the applicability of Estelle to the instant case. Isn't Estelle quite distinguishable from this case? This was not a capital case. Correct. And the defendant's participation in the evaluation occurred after his conviction. But in Estelle, he was interviewed before the trial. The exam's objective did not change in Estelle. Evaluation was to determine fitness in the stand trial, and the remarks were used to establish something else of future dangerousness. And unlike the capital sentencing here, there was no burden of proof to be met in this case. The trial judge had discretion to impose a sentence within a range of years set by the legislature. It just seems to me that the evaluation is testimonial in Estelle. They were found to be testimonial but may not be here. The second problem that I have is that I'm not certain these statements are even incriminating. He was found by the evaluator to be antisocial, impulsive. It is not really a crime to be any of those things as found by the evaluator. You just can't prosecute for those things that this evaluator found. So the implication that the Fifth Amendment is concerned, I just don't see it here. The evaluator testified. Would you correct me? Well, I'll try to cover that as comprehensively as I can. One of the distinctions between Estelle and the instant case, and it seems that one of the questions that you have and it was raised by the state, is whether or not there's actually a statement that is used that somehow incriminates the defendant by his own means. And as in Estelle, there was no statement specifically attributed to the defendant, rather, and as in Estelle, it was based on the evaluator's opinion formed based upon those questions and that evaluation. It wasn't any specific statement, but it was the information that was provided. In this case, it appears that there were a minimum of 223 questions posed to the defendant in the course of the sex offender evaluation. It was based on those questions, and while some of them may have related to his anger management difficulties, his inability to control certain urges that he had, the fact of the matter was that all of these questions were used to inform the evaluation. Would you tell me which statements were incriminating? I cannot point with any specificity to the statements that were incriminating, and I would note that that was not an issue in Estelle either, that it wasn't specifically the statements that the defendant made, but the evaluator's finding that he lacked remorse, that he lacked the ability to control himself, and the basic conclusion that he would be likely to reoffend. It wasn't the statements that were found to violate constitutional principles, but the information and the opinion that was formed on the basis of that. I would also note that there's a great difficulty, and this was pointed out in the foreign case of Diesel that was utilized by the appellate court and has been utilized by the State as well. Diesel pointed out that very often in these cases the difficulty is that a defendant, in fact, denies any culpability for the offense, denies that he did it, denies that there is any difficulty, and very often it is that denial that is the first and primary factor that is used against the defendant in determining that he has no ability to rehabilitate or that he is a threat for recidivism and a threat to society because he hasn't acknowledged his own conduct in this case. The difficulty is that where an evaluation like this is required, that denial alone, that statement appears to be one of the factors used by the evaluator in finding that he was in denial of past misconduct, she couldn't trust what he was saying, and that was used against him as the evaluation then was presented to the court. Counsel, I want to elaborate a little bit on Justice Freeman's question regarding Estelle versus this case. This case was post-trial, right? Yes. The defendant was represented by counsel, right? I'll note at the end of the question that there is a question about representation. Okay. He knew what the evaluation was going to be used for. Is that correct? I would say that he didn't because the court's order said that the evaluation was pursuant to Section 16 of the Sex Offender Management Board Act, which by its terms concerns probation and the ability or the propriety of releasing a defendant on probation. He didn't object. There's no controversy. He did not object. He did object. He didn't object on that basis. And part of counsel's objection was the fact that he was seeking to withdraw, and that's part of the counsel question that is part of your question. And were portions of the evaluation that were favorable to him? Did he rely on some of those portions? He did. I would say in part because he was forced to. That was the hand he was held. So let me put the question this way. Which of the concerns that Estelle, that prompted the holding in Estelle are present in this case? The two primary ones are the assumption within your question that the defendant knew the purpose of the And, in fact, as in Estelle, it was not. In Estelle, it was a competency evaluation that was the purpose of it, and it's not that the evaluation itself changed. It's that the use of the evaluation changed. When that evaluation was used at sentencing in Estelle and in the instant case, it went from a determination in Estelle of competency in the instant case of the propriety of probation to being used to aggravate the sentence that was imposed against the defendant. So the primary theme, I would say, underlying Estelle that informs this case is where an evaluation or some sort of inquiry is used for designated and begins with one purpose, and that purpose may carry throughout the inquiry, but then ultimately those results are used for a different purpose without advising the defendant of the fact that that can be used against them. And the fact that the statements that were made and some of the findings that were made were both inculpatory and exculpatory does not seem to bring this out of the realm of the Fifth Amendment because of the basis of Miranda, which said that both inculpatory and exculpatory statements are prohibited where the defendant is not first made aware that he has the right to remain silent and that the statements can be used against him. In Miranda, obviously, it was a trial situation pre-conviction, but Mitchell has extended the inquiry here to a sentencing concern as well. Thank you. If we start with the premise that a PSI and any evaluations are designed to give the trial judge the benefit of as much information as possible to fashion an appropriate sentence, and the statute requires that in a case where probation is to be considered that the sexual evaluation is to be done, is your argument concerning the violation of the Fifth Amendment privileges and rights that this defendant is claiming broad enough to cover those situations where the court orders it prior to considering probation? And aren't the defendants in those cases being asked the same questions? Are the court to determine whether probation should be granted or whether it shouldn't be granted? And isn't the court using this here to determine whether the sentence should be more lengthy or not? I guess the short question is, are you also indicating that the Fifth Amendment rights of people who are being considered for probation are being violated by requiring them to undergo this evaluation? The short answer is that yes, that it does involve both. It may be a different set of analysis. And part of your question can be divided up into another subcategory where there is a person who is not in custody at the time that he undergoes the evaluation, and that's more likely to be a candidate for probation in the first place. And under those circumstances, the question might turn to the second exception that was noted both in Estelle and in Minnesota v. Murphy where the question is whether requiring a defendant to undergo an evaluation to determine whether or not he will receive probation, whether under those circumstances that is a compulsion that undermines the defendant's will and ability to refuse to participate. Where the, I think the quicker answer or the easier answer here is that where an evaluation such as this occurs, it be limited unless the defendant is advised ahead of time and given the opportunity to refuse to participate in the evaluation, an opportunity he wasn't given in the incident case. Short of that, then the only remedy is to not allow that to be used for a purpose other than the determination of probation eligibility or probation propriety, but instead of being used as it was in the incident case. Aren't the arguments that you've just given why this is a problem, wouldn't that apply with equal force to all pre-sentence investigations? No. To the extent that most pre-sentence investigations are for a set purpose and don't require a statement by the defendant. One of the difficulties here is that the defendant was advised that he could not proceed to sentencing until he participated in this evaluation. He wasn't given a choice. There was no ability to opt out of the evaluation. And in a typical. That's true of PSIs. But in most PSIs, the information that is gathered can be obtained from other sources and usually is in terms of the past record of the defendant, both in terms of past offenses, his work record, his family history. None of these require statements from the defendant that allow the evaluator to use the defendant's own answers to in this case over 223 questions to then determine the likelihood of recidivism. It's a different question with a parole officer or a probation officer in terms of the fact that, again, that is an evaluation, the purpose of which is known and the purpose of which doesn't change. Counsel, at what point did the parties become aware of the fact they were misusing the statute to get this information? I'm not certain that the parties were aware of that until the matter was appealed. The trial courts throughout indicated that this was a mandatory evaluation, that sentencing couldn't occur until the evaluation occurred. There was no objection probably on the basis of the trial court's finding that it was in fact mandatory. So any decision the trial judge made toward viewing the report was under the belief that he was doing something he was required to do by statute? That's correct. He indicated that he had no discretion in the matter, that it was mandatory. Does that become a basis for seeking a favorable result in this appeal for your client? It does. In terms of beyond the constitutional issue, the fact that this was not an authorized evaluation by the court. Instead, this was to be limited only to probation matters. To the extent that psychological evaluations are provided, the court, again, exercised no discretion and, therefore, the claim that this was part of the catch-all, that it was a means of gathering other information, is inappropriate. Counsel, didn't the trial court have authority before the amendment to order an evaluation? And if he did so, what's the problem? I mean, otherwise there would be no reason for the legislature to amend the statute to include the prohibition of the statute already prohibited. Except that even before the amendment, which says specifically it's not to be conducted when a defendant is not eligible for probation, it limits by its own language the evaluation to those who are being considered for probation. And the Sex Offender Management Board Act separately says when a defendant is to be considered for probation, these things need to be done, these treatments need to be considered, and it's in this fashion that it will be done. One of the things the report did say is that this defendant faced a high risk of reoffending. Is that accurate? That's accurate. If there are no further questions, I thank you. May it please the Court. I'm Assistant Attorney General Erin O'Connell on behalf of the people of the State of Illinois. There are two grounds on which this Court should deny relief to the defendant. First, he has forfeited his claims. Second, they're meritless. I'd first like to address the forfeiture issue. As defendant has conceded here an oral argument, the people did preserve their argument in the appellate court. The appellate court simply opted not to rely on the forfeiture issue. However, as Justice Thomas has pointed out, this Court tends to rely on non-constitutional grounds where possible, and here forfeiture provides such an opportunity. Defendant has responded that he did, in fact, object on page 178 of the record, and that this somehow preserved his claims here. If the Court looks at that objection, it will note that this was an objection that the Court should not rule at that hearing on the State's motion for there to be a sex offender evaluation on the ground that the defendant did not receive sufficient notice of the motion. The State argues that it raised forfeiture below in the appellate court, but to me it's not clear from the brief what was preserved. In the people's appellate brief, they argued that the defendant waived his challenge to the Court's consideration of the results because at the sentencing hearing, defendant was given an opportunity to object to the PSI. The sex offender evaluation report was attached to the PSI. The defendant made no objection at that time, so the people have cited the cases to that effect. And the defendant has never at any point objected on Fifth Amendment grounds to the trial court's consideration of the results of the sex offender evaluation. Such a relevant objection would be necessary to preserve his claim. In addition, as he's conceded he did not include it in a post-sentencing motion, that would be sufficient ground by itself to find that this is forfeited. There is furthermore good reason in this case to find a forfeiture and require the defendant to show plain error. As a result of his failure to object, the record is completely devoid of any information as to what actually transpired at this particular sex offender evaluation. Now the parties argue the merits of the claims based on a set of assumed facts as to what would be expected to occur at a sex offender evaluation. The people's position is that this court can deny this claim on the merits just based on those assumed facts. As a general matter, Miranda warnings are not required before a routine pre-sentence investigation or a sex offender evaluation that's ordered as supplementary to the traditional pre-sentence investigation. And defendant has not even at any point argued that he can demonstrate plain error here. There was a motion to reconsider sentence which did not raise the claims here, but it was considered at a separate hearing. The court at that time, its attention was called to some contradictory evidence in the record. As a result of the sex offender evaluation, the evaluator concluded he had a high risk of recidivism. However, there's also something called a rapid risk assessment which was attached to the PSI and it was something not done by the sex offender evaluator but by the person filling out the PSI. According to that, defendant fell within the lowest risk category. So in his post-sentencing motion, defendant said that the sentence was excessive in light of this evidence that he had a low risk of recidivism. Given that opportunity, the trial judge explained that it was not relevant to his determination of defendant's sentence whether he had a low risk or a high risk of recidivism. The court clarified at that time that it was this serious damage, psychological damage, that defendant had caused his victim that motivated the court to impose a sentence of 20 years. There were also additional factors such as the need to deter future such crimes that the court did cite in the initial sentencing hearing as additional reasons behind this 20-year sentence. One final issue in the reply brief at page 4, defendant does make an assertion that he was not required to object on the ground that a constitutional challenge to a statute may be raised at any time. I think it's easy to see that that rule does not apply here because we are not considering the constitutionality of any statute. Defendant has stated here that he is raising the lack of authority to order sex offender evaluation as an independent basis for relief from his sentence. Because he never objected to the trial court's ordering of the sex offender evaluation, however, he still needs to show plain error here. Even given his argument that the trial court did not exercise any discretion in ordering this evaluation, and instead just by mistake believed that it was mandatory, even where a trial judge makes such a mistake, this court still applies a plain error test. It's not an automatic reversal where a trial judge fails to properly exercise its discretion. Defendant, for all the reasons stated, cannot demonstrate that this was plain error to order the sex offender evaluation. Defendant does respond to the people's argument that 730 ILCS 55-3-2, which is the provision that allows the court to order a mental examination, did not actually confer on the court authority to order a sex offender evaluation in this case, and he cites to the language that the mental examination should be ordered to be performed by a psychologist or a psychiatrist. Admittedly, here, the sex offender evaluator was a licensed clinical social worker. However, this court, in interpreting statutes, does afford terms that are plain and ordinary meaning. The people submit that the plain and ordinary meaning of the term psychologist is broad enough to encompass a licensed clinical social worker. Finally, as to the issue of whether Miranda warnings were required, the court has noted the many factors that distinguish this case from Estelle. The primary most significant distinction is that this occurred post-trial pre-sentencing. Estelle dealt with a pre-trial examination. The differences are that by the time of a post-trial examination, a defendant is well-versed in his Fifth Amendment right. He's also counseled. It's fair at this point to place the burden on the defendant to raise his Fifth Amendment right at the time he is being asked an incriminating question. Here, it would be fair to assume that counsel would take on the obligation of explaining to the defendant that if he were asked a particular incriminating question at the sex offender evaluation, he does have a Fifth Amendment right to at that time not refuse to answer that question. Furthermore, in this particular case where you have a pre-sentence investigation, it's not the situation that the state is relying on the information obtained for an adversarial purpose. Estelle dealt with the prosecutor putting the evaluator on the stand and having him give affirmative testimony to meet the state's burden of proof that the defendant posed a future danger to society. Here, the state did nothing to rely on the results of the sex offender evaluation. The state didn't even mention in its argument to the court at sentencing that this was a factor that should be used to aggravate the defendant's sentence. The trial court, the judge was the only person to mention the results of the evaluation. That brings us outside of the purview of Estelle because we are dealing with a neutral party, the court, relying on this information simply to inform its exercise of its sentencing discretion and not by the state in an attempt to impose a more severe penalty on the defendant. Another distinction is that the defendant was aware of the purpose to which the evaluation would be used. I think it's a fair presumption given that none of the parties ever raised the issue that a sex offender evaluation is typically intended to be used to guide a determination of whether to impose a sentence of probation. None of the parties understood this evaluation to be so restricted in its relevance at the sentencing hearing that that would be its only use. The parties understood from the outset that the court was ordering this evaluation to inform its sentencing discretion. The parties also knew that probation was not an option. So the parties did have a basic understanding of what use these. At what point were the parties aware of the fact that they were misusing the statute? I don't believe that the issue was raised until the appeal. You just mentioned that the state knew that it was appealable. Maybe I missed something. What did I say? The state never at any point raised this to the court's attention, neither did the defendant, that this provision the court was relying on was the incorrect provision. Before the appellate court, the defendant did argue that it was inappropriate. And, of course, once you look at the plain language of the statute, it does appear that the statute, the statutory provision did not apply. So the state at that time argued. Was there any other statutory provision that justified the state ordering this material? Yes, the judge was authorized under its general authority to order a pre-sentence investigation, including a mental examination. Specifically for the risk level of being a further sex offender? Well, the sex offender evaluation would come within the language of being a mental examination. So because the language is so broad and general in the statute, and there was nothing that would preclude the court from ordering a sex offender evaluation, I mean, there's certainly a question whether that would be the case now that the statute has been amended. That broad authority did allow the court to order the sex offender evaluation. If that's the case, counsel, then, you know, if you say it's in the broad purview of mental examination, then how does a clinical social worker fall in the category of medical practitioners identified in that section? That would be just an ordinary, common meaning interpretation of the word psychologist. A licensed clinical social worker often serves identical purposes to a psychologist. It's fair to read the term psychologist to include the licensed clinical social worker here. I'm sorry, what's your basis for that statement? That statement would just be based on ordinary dictionary definition of psychologist. The court can consult any dictionary. My own research indicates that a psychologist is someone concerned with mental processes, and that is... Did we have a, what, a certified social worker here? Right, correct. She's a licensed clinical social worker. Where does the term psychologist get applied to that person? It's certainly a question of statutory interpretation whether psychologist would include a licensed clinical social worker. However, again, even if the court had no authority to order the evaluation, this still does not rise to the level of plain error, and therefore it should not provide a basis for relief for defendants. And then finally, there is an alternative basis for finding that Miranda warnings would be required, and that's even though Estelle does not apply, Miranda still says if you have a custodial interrogation, you need to provide Miranda warnings. The people have argued that Miranda warnings were not required under that test, because this was not custodial, nor was it interrogation. Now, defendant has argued that he was in custody, simply technical custody, because he was in the custody of jail officials while he was awaiting sentencing. However, this court in People v. Patterson said that's not enough. There's not a per se custody finding for Miranda purposes, simply because someone is technically in the custody of jail or prison officials. Defendant has never attempted to make that additional showing that somehow this sex offender evaluation was more restrictive than the jail environment to which he was accustomed, nor could he do so. Here he was taken from the jail to a place where mental health evaluation and treatment was the focus. He was not subjected to interrogation by someone affiliated with law enforcement. He was a licensed clinical social worker whose emphasis is on evaluating the severity of his psychological traits that would tend to support a finding that he was at a high risk of reoffending. In that sense, this was less restrictive in certain aspects than was the jail environment to which he was accustomed. Therefore, under Patterson, this court has held that that does not amount to custody for Miranda purposes. It also does not meet the requirement of interrogation, because the licensed clinical social worker was not an agent of law enforcement at any point. The meaning of interrogation requires that there be at least some involvement from law enforcement seeking to prosecute someone on the basis of past conduct. That was simply not present in this case. And although Estelle said that it can constitute interrogation if the prosecution ends up using this, that also didn't occur in this case. The prosecution made no attempt to even bring the recidivism to the court's attention as an aggravating factor. Therefore, this would not fall within the more general test for whether Miranda warnings would be required in this circumstance. As the court has noted, there really is no principal basis here for finding that this violated defendant's rights. But it wouldn't violate his rights in a routine pre-sentence investigation. There's no real distinction between a sex offender evaluation and a pre-sentence investigation in terms of the sorts of information that will be gathered. There is a potential, certainly in a pre-sentence investigation, the defendant is asked about his prior conduct, other instances of criminal behavior. Those are the types of questions that are traditionally seeking an incriminating response. Courts have fairly universally held that in that context Miranda warnings are not required. There's really no principal distinction for a sex offender evaluation that would somehow make the rule different in this circumstance. If the court has no further questions, we would ask the court to affirm the judgment of the appellate court. Thank you. Counsel, I believe you said this in your initial argument. There is no longer any dispute, is there, that there was a forfeiture argument made by the state below in the appellate court. You did say that. Again, turning to a comparison to Estelle, I think that one of the things to be noted is that while the state claims that there was a general authority provided by the corrections code allowing the trial court to delve into virtually any area that might help inform its decision, I would note that the same argument was made in Estelle. In Estelle, the court noted that any sort of catch-all was not appropriate to the extent that it concerned a constitutional violation, where there was an overbearing of the defendant's will and a, where the defendant was not informed of his constitutional rights. That exceeded any sort of authority that might be provided by the catch-all that was used by the Texas legislature and evaluated by the Texas court in Estelle. In the same case, while there are some exceptions and some ability for the trial court to inquire into certain areas, first of all, it should be noted, one, that's limited to the extent that the court finds it useful. And here, it wasn't that the court found that this would be useful or beneficial to the court. Rather, the court stated it had no option, it was mandatory. So it wasn't an exercise of discretion. Secondly, the inquiry violated the constitutional freedom from self-incrimination, and in that extent parallels Estelle and brings us out of the realm of a catch-all provision. Third, I would note that while the state claims that the state had no hand in the use of this at sentencing, it should be noted that the state's motion, the state sought the inquiry in the first place, and that's how it came to the court's attention and was provided for use at sentencing. Again, the primary question is the purpose of the evaluation in the first place, and then its ultimate use at the sentencing hearing. And in the instant case, that's what changed the probation officer, or in this case, the licensed clinical social worker, from a neutral party to somebody who was providing information for purposes of enhancing the defendant's sentence. And while the state argues that the record is devoid of any showing that might be useful to the court as to whether the defendant was provided Miranda rights by the licensed clinical social worker, it should be noted here that the court's affirmative statement that the  violate the statute. It brings this case into the realm of violating its constitutional rights and provides any, effectively vitiates any warnings that might have been given to the defendant. For those reasons, if there are no further questions, I would conclude by asking that this matter be remanded for a new sentencing hearing without the use of the sex offender evaluation. Thank you.